UNITED STATES DISTRICT COURT
for the
Middle District of Florida
Orlando Division

Case No.

EPRENTISE, LLC,

    Plaintiff,

    v.

SATISHCHANDRA TIWARI and
EPRENTISE SOFTWARE PRIVATE LIMITED,

    Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF

- **Violation of the Defend Trade Secrets Act of 2016**
- **Violation of the (Florida) Uniform Trade Secrets Act (FL UTSA), Fla. Stat. Ann. § 688.001 et seq.**
- **Unauthorized Use of Plaintiff's Registered United States eprentise® Trademark and Indian Registered Trade Mark**
- **Potential Infringement of United States Patent No. 8,103,704 B2 covering processes for database consolidation and separation**
- **Breach of Fiduciary Duty, Fraud, and Breach of Contract**

### The Parties

1.    Plaintiff, eprentise, LLC, ("Plaintiff"), is a Florida Limited Liability Company with its principal place of business in Orlando, Florida.

2.    Defendant Satishchandra Tiwari, ("Tiwari"), is a naturalized United States citizen currently residing in Bangalore, Karnataka State, India.

Page 1

Based on information and belief, at the time of his naturalization Tiwari was a citizen of the State of New Jersey.

3.     eprentise Software Private Limited, ("ESPL"), is a Private Limited Company organized under the laws of India.

4.     Tiwari owns 50% of ESPL and is the Managing Director of ESPL.

5.     The wife of Tiwari owns the remaining 50% of ESPL.

6.     As used hereinafter, the term "Parties" refers to Plaintiff, Tiwari, and ESPL. The term "Defendants" refers to Tiwari and ESPL collectively.

## SUBJECT MATTER JURISDICTION

7.     Pursuant to 18 U.S.C. §1836(c) this court has subject matter jurisdiction over Plaintiff's claims for relief under the Defend Trade Secrets Act (DTSA). 18 U.S.C.A. § 1836(b).

8.     Pursuant to 28 U.S.C. §1338 this court has subject matter jurisdiction over Plaintiff's claims for relief relating to Plaintiff's registered United States trademark. *See* 15 U.S.C. §§1114(1) and 1116.

9.     Pursuant to 28 U.S.C. §1367(a), this court has supplemental subject matter jurisdiction over claims for relief under the Florida Uniform Protection of Trade Secrets Act, Fla. Stat. Ann. §§688.001 et seq. and claims for relief for violation of Plaintiff's registered Indian eprentise Trade Mark, No. 5016816.

10.    Pursuant to 18 U.S.C. §1836(c), 28 U.S.C. §1338, or 28 U.S.C. §1367(a) this court has subject matter jurisdiction or supplemental subject matter over Plaintiff's claims for relief that include:

(1)  claims for relief to prevent future infringement of Plaintiff's United States Patent No. US 8,103,704 B2, issued January 24, 2012; and

(2)  claims for injunctive and equitable relief to prevent unfair competition of Defendants with Plaintiff centered around the commercial exploitation of Plaintiff's trade secrets, confidential information, trademark, and associated marketplace good will that are threatened by Defendants' past and continuing violations of federal trade secret and trademark laws set forth in ¶¶ 7 and 8.

## VENUE AND DIVISIONAL VENUE

11.    Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2). A significant part of the events giving rise to the claims in this action occurred in Orlando, Florida, and the intangible property including Plaintiff's trade secrets and trademarks, the protection of which is centrally involved in this action, are "located" in Orlando, Florida.

12.    Since 2007, the business relationship of Plaintiff with Defendant Tiwari is centered around Plaintiff's state of formation and principal place of business, Florida, and Orlando, Florida, respectively.

13.    The Plaintiff's relationship with Defendant ESPL is also based around Plaintiff's state of formation and principal place of business, Florida, and Orlando, Florida, respectively, and began in April of 2012 when ESPL was registered as an Indian company.

14.    All revenues of ESPL are remitted from Plaintiff's offices in Orlando, Florida.

15.    Throughout the period from 2007 until the end of 2020, Defendant Tiwari (and after 2012, Tiwari individually and additional employees of ESPL) conducted business of ESPL by taking instruction as to their work activities from Plaintiff and by regularly participating (via virtual connection) in Plaintiff's weekly team meeting hosted and presided over by Plaintiff's CEO at Plaintiff's offices in Orlando, Florida.

16.    The trade secrets and trademarks involved in this action are the property of Plaintiff, which has been located in Orlando, Florida since its creation.

17.    A patent owned by Plaintiff's CEO, who is a resident of Orlando, Florida, is utilized by Plaintiff and Defendants working in support of Plaintiff in architecting, developing, and assisting customers in the use of Plaintiff's software.

18.    For all of the reasons stated above, this action is properly brought in the Orlando Division of the United States District Court for the Middle District of Florida.

19.    In a series of documents reflecting the operating arrangements of the parties, venue for any dispute is specified as being in a court, state or federal, located in Orlando, Florida. *See* Agreement of eprentise, LLC and

Satish Tiwari (March 28, 2012) (Exhibit A); Start-Up Funding and Master Services Agreement between eprentise, LLC and eprentise Software Pvt Ltd (May 2012)( Exhibit B); Operating Agreement of EPRENTISE, LLC and EPRENTISE SOFTWARE PVT LTD (April 14, 2014) (Exhibit C); eprentise-eprentise Software Pvt Ltd – 2020 Operating Agreement (September 3, 2020) (Exhibit D).

## BACKGROUND

### Initiation of the Business Relationship of the Parties

20.    Plaintiff is a niche software company that produces products used in the United States and internationally by companies that utilize the Oracle® E-Business Suite in the conduct of their operations.

21.    From 2007 until mid-2012, Tiwari was employed by an Indian technical services consulting firm, Sakeesoft Infotech Private Limited ("Sakeesoft"), as Sakeesoft's project leader for a project that provided software development and support services to Plaintiff.

22.    In his role as project manager for the eprentise project at Sakeesoft, Tiwari was given access to trade secret and confidential information of Plaintiff subject to contractual obligations requiring protection of that material against disclosure.

23.    During that period, Plaintiff awarded Tiwari (who was still an employee of Sakeesoft), with a membership interest in Plaintiff that included

voting, profit, and equity interests, as part of its employee retention program. The interests, which were awarded without monetary investment of Tiwari, were accepted by Tiwari.

24.    During the early months of 2012, Plaintiff assisted Tiwari in obtaining releases from restrictive covenants that he and other Sakeesoft employees had with Sakeesoft that would permit Defendant Tiwari and the others to continue working to develop and support Plaintiff's software under the auspices of a company that, when formed, became ESPL. All consideration for these releases was paid by Plaintiff. The termination of Tiwari's restrictions against competing with or hiring  Sakeesoft colleagues did not affect or diminish Tiwari's obligations requiring protection of Plaintiff's trade secret and confidential information against improper use or disclosure.

25.    Plaintiff assisted Tiwari in his formation of ESPL in numerous regards, including payment or reimbursement of all costs incurred in establishing ESPL to carry on the development and support of Plaintiff's software products that previously had been provided by Sakeesoft.  Plaintiff also submitted an agreement (*see* Exhibit A) that Tiwari needed in order to use the name eprentise setting out basics of the relationship between ESPL and Plaintiff.  This document was used to register the business of ESPL with the Indian authorities.

26. Once ESPL was formed, Tiwari served and continues to serve as Managing Director of ESPL.

27. Plaintiff authorized Tiwari to use the trademarked eprentise® name in registering ESPL as an Indian Private Limited Company.

28. Plaintiff 's authorization to Tiwari to use the trademarked eprentise® name as part of the name for ESPL was subject to revocation at any time by Plaintiff in Plaintiff's discretion. *See example* Exhibit B, ¶2.

29. Once Defendant ESPL was established, all work on Plaintiff's software and contributions to trade secret procedures done by ESPL and its personnel, including Tiwari, was done as work for hire and is the exclusive property of Plaintiff. *See* Ex. A. (*See examples* Exhibit B, ¶¶ 18, Form 2, ¶3, Exhibit D, ¶3b Form 1 ¶2,).

### The Operating Relationship of the Parties
### between June 2012 and December 2020

30. During the eight and one-half year period of June 2012 through December 2020, Plaintiff was the sole customer of ESPL.

31. During the eight and one-half year period of June 2012 through December 2020, ESPL was the principal provider to Plaintiff of technical software development and support services. The only exceptions were efforts provided by Plaintiff's own U.S. workforce and, occasional highly specialized

consulting services related to intricate Oracle EBS topics, such as inventory costing.

32.    During the eight and one-half year period of June 2012 through December 2020, the actual operations of the Parties in regard to development and support of Plaintiff's customers was tightly integrated due to the exclusive dealing and reliance of the Parties on one another.

33.    The series of four documents set out as Exhibits A – D, including references to actual practice, describes the operating arrangement between the Parties.

34.    The first of these (Exhibit A) was used only to register the company in India and was the predecessor to the Start-Up Funding and Master Services Agreement between eprentise, LLC and eprentise Software Pvt Ltd (May 2012)( Exhibit B)

35.    The second of these is the Start-Up Funding and Master Services Agreement between eprentise, LLC and eprentise Software Pvt Ltd (May 2012)( Exhibit B) that will be referred to as the "2012 Document."

36.    The third of these is the Operating Agreement of EPRENTISE, LLC and EPRENTISE SOFTWARE PVT LTD (April 14, 2014) (Exhibit C) that will be referred to as the "April 2014 Document."

37.    The fourth document is the eprentise-eprentise Software Pvt Ltd – 2020 Operating Agreement (September 3, 2020) (Exhibit D) that will be referred to as the "September 2020 Document."

**The Role of Defendant Tiwari in Plaintiff, eprentise, LLC**

38.    During the 2012-2020 period, Plaintiff authorized Tiwari to hold himself out as being closely affiliated with Plaintiff, which he in fact was. In addition to leading the software development and support team, Tiwari was awarded ownership (membership) interests in Plaintiff additional to those mentioned in ¶23 for his service in managing ESPL. Again, these interests were awarded and accepted by Tiwari without monetary investment by Tiwari. After his third award of interests in January of 2016, Tiwari's equity share in the event that Plaintiff was sold for an amount in excess of $5,000,000 was the second largest share held by any member.

39.    During the 2012-2020 period, Tiwari was permitted to represent Plaintiff by speaking at conferences.

40.    During the 2012-2020 period, Tiwari was held out in meetings with customers and potential purchasers of Plaintiff as Plaintiff's Chief Technical Officer.

41.    During the 2012-2020 period, and to carry out his duties on behalf of Plaintiff, Tiwari was granted comprehensive administrative privileges to all

Plaintiff's computer and document storage and retrieval systems. The document systems held, among other things, all financial, customer, and intellectual property records of Plaintiff.

42. Based both on function and on his affiliation with ESPL, until January 2021, Defendant Tiwari and ESPL personnel were given access to the trademarked eprentise® name and logo, Plaintiff's patented software, and Plaintiff's trade secrets and confidential information to be used solely in conjunction with activities undertaken on behalf of Plaintiff. *See* Exhibit C, App. I. *See also,* Exhibit D, ¶10., d.

### Termination of the Working Relationship of the Parties

43. The authorizations granted by Plaintiff to Defendants to use the name and the intellectual property, including those authorizations noted in ¶42, were revoked by termination of the business relationship as Defendants were no longer utilizing that property of Plaintiff to provide services to Plaintiff. *See* Exhibit C, ¶6.

44. Near the end of 2020, working relations between Tiwari and Plaintiff deteriorated.

45. In December of 2020, Plaintiff, which had the right to take assignment of ESPL employee contracts to preserve the availability of that workforce and the development and support of its software products, made

plans to create a wholly owned subsidiary in India for that purpose. The creation of such a new Indian entity took a period of time due to the impact of COVID-19 disruption of governmental functioning.

46.    The termination of the eprentise-Tiwari relationship was effective as of December 31, 2020. As of that date and thereafter Defendant Tiwari indicated that he would no longer provide services to Plaintiff other than assistance in the transition of ESPL's other employees to the new Bangalore, India-based company then being formed by Plaintiff.

47.    By early March of 2021, Plaintiff had established a new Indian entity, eprentise Infotech Private Limited ("EIPL"), that took over the ESPL employees and has since continued operations for the development and support of Plaintiff's software.

## CLAIMS AND RELIEF SOUGHT

### Count I—Violation of the Defend Trade Secrets Act of 2016 (DTSA)

48.    Plaintiff reincorporates and alleges incorporates and realleges Paragraphs 1 through 47 above as if set forth fully herein.

49.    The DTSA (Public Law 114-153, 130 Stat. 376 (2016), a part of the Economic Espionage Act) (18 U.S.C. § 1831, et seq.). 18 U.S.C. §1836(b)(1) creates a federal cause of action in favor of an owner of a "trade secret that is

misappropriated * * * if the trade secret is related to a product or service used in * * * interstate or foreign commerce."

50.   The software produced by Plaintiff and the support and analysis services that attend the use of that software are products used in interstate and foreign commerce.

51.   Pursuant to 18 U.S.C. §1837(1) the DTSA applies to conduct occurring outside of the United States if the "offender is a natural person who is a citizen of the United States. As set out above, Defendant Tiwari is a naturalized citizen of the United States.

52.   On or about April 14, 2022, Plaintiff learned that Tiwari, after the termination of his relationship with Plaintiff, wrongfully retained and has in his possession or control at least 17,000 pages of materials that contain trade secrets and confidential business information of Plaintiff and Plaintiff's customers.

53.   The materials possessed by Defendant Tiwari are trade secrets within the meaning of 18 U.S.C. §1839(3). The materials include: (1) computer scripts developed by Plaintiff; (2) hard copies (and possibly electronic copies) of portions of Plaintiff's software code; (3) methodologies for applying Plaintiff's software in customer computing environments; and (4) other technical data that form the secret information that gives Plaintiff's software a competitive

advantage compared to other products and consulting efforts that attempt to perform functions similar to those carried out by Plaintiff's products.

54. The materials in possession of Tiwari also include "financial" and "business" information covered by the §1839(3) definition, such as: (1) identifiable customer-specific information essential to Plaintiff's own business; (2) secret or confidential information belonging to Plaintiff's customers; and (3) secret information about Plaintiff's customers.

55. The trade secrets described above are and always have been the property Plaintiff, were shared with Defendants solely within the scope of the (business) relationship with Plaintiff, which ended after December 31, 2020.

56. Defendants' failure after January 1, 2020, to verifiably return or destroy all copies of Plaintiff's trade secrets constitutes misappropriation of those trade secrets that is subject to injunctive relief under 18 U.S.C. §1836, subsections (b)(1), (b)(3)(A)(i), and (b)(3)(A)(ii) to prevent actual or threatened misappropriation and irreparable injury to Plaintiff as a result of the misappropriation of statutorily protected trade secrets.

57. As a matter of contractual agreement, Defendants are subject to non-compete and non-hire provisions that will, if not extended, expire on December 31, 2022. *See* Exhibit C ¶5.

58.    As a matter of contractual agreement, Defendants are subject to non-compete and non-hire provisions that will, if not extended, expire on December 31, 2022. *See* Exhibit D ¶7.

59.    Upon information and belief, Tiwari is intending to compete with Plaintiff in the near, if not immediate future.

60.    Upon information and belief, Tiwari is intending to compete with Plaintiff in the near, if not immediate future, either using Defendant ESPL, a successor company to ESPL, a renamed successor to ESPL, or a newly formed company, as the legal entity that will engage in the competition.

61.    ESPL continues to be controlled by Tiwari and his wife. (*See* ¶¶ 4, and 5.)

62.    The use by Defendants, now or after December 31, 2022, of the wrongfully retained trade secrets threatens willful misappropriation of those trade secrets that is proscribed by 18 U.S.C. §1832 and that will cause Plaintiff irreparable injury.

63.    Due to the immediate threat of irreparable injury, Plaintiff demands injunctive relief that will immediately terminate the continued misappropriation by Defendants and that will proscribe the use or threatened use in commerce by Defendants of the wrongfully possessed trade secrets of Plaintiff. The relief sought includes but is not limited to:

    a. an order that Defendants return to Plaintiff or Plaintiff's designee all copies of Plaintiff's trade secrets stored in a form that is easily transported;

    b. that Defendants destroy all copies of the wrongfully possessed trade secrets of Plaintiff (including backup and archival copies and copies that Defendants may have shared or otherwise delivered to third parties);

    c. that Defendants certify destruction of the wrongfully possessed trade secrets of Plaintiff in a manner satisfactory to the Court under threat of contempt should Defendants fail to obey fully the Court's Order, and an admonition that failure to comply fully with the Court's Order is a contempt and use of those trade secrets for commercial advantage is a predicate for a violation of 18 U.S.C. §1832; and

    d. identify any and all individuals or businesses with whom the Plaintiff's protected information was shared and also identify any and all uses of the protected information made by Defendants or those third parties after the termination of the business relationship and identify any and all contracts or business transactions acquired or undertaken by Defendants as a result of Defendants' possession of the protected materials.

64. Further, due to Defendants location in India, making inspection or other means of compliance assurance difficult, Plaintiff also demands that the period for Defendants' worldwide non-competition and non-hiring of current EIPL employees be re-initiated as of the day on which Defendants certify to the Court that they have complied with the Court's injunction requiring Defendants return or destroy all copies of Plaintiff's trade secrets in their possession (including copies provided to third parties).

65.    Further, due to the threat to Plaintiff's reputation of Defendants' unreasonable delay in ceasing use of Plaintiff's registered trademark, Plaintiff demands that Defendants be enjoined to cease using the name "eprentise" immediately. Defendants use of "eprentise' will cause immediate, irreparable harm to Plaintiff, along with any other relief deemed just and appropriate.

## Count II—Violation of the (Florida) Uniform Trade Secrets Act (FL USTA), Fla. Stat. Ann. § 688.001 et seq.

66.    Plaintiff incorporates and realleges Paragraphs 1 through 65 above as if set forth fully herein.

67.    FL USTA §688.003 (1) states that, "Actual or threatened misappropriation may be enjoined."

68.    The definitions section of the FL USTA, §688.002(2) defines misappropriation to include: "Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." The section continues that "acquired by improper means" includes:

> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>    * * *
>    2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
>       * * *
>       b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."

> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use."

69.    In the instant case, Tiwari's and ESPL's (and any third persons with whom Defendants may have shared those trade secrets) current possession of Plaintiff's trade secrets is improperly acquired because Defendants know or should know that the trade secrets were entrusted to them with an expectation that secrecy would be maintained and that upon termination of the business relationship with Plaintiff retention or use Plaintiff's trade secrets by them was unlawful.

70.    Upon termination of the relationship of the Parties on December 31, 2020, Tiwari retained and continues to possess a laptop that was to be returned to Plaintiff that had been issued with software licensed to Plaintiff and with credentials that allowed access to all of Plaintiff's systems, including those on which Plaintiff's trade secret5s and confidential information resided.

71.    Upon information and belief, the 17,000 pages of trade secrets (referred to in ¶ 52) were initially removed by Tiwari from the workplace on said laptop which was not transferred to the personnel whose contracts were transferred to EIPL.

72.    FL USTA §688.006 expressly authorizes a court to "[order] any person involved in the litigation not to disclose an alleged trade secret without prior court approval."

73.    The use by Defendants or of any person with whom Defendants have shared Plaintiff's trade secrets will cause Plaintiff immediate, irreparable harm due to the loss of secrecy of those materials that would permit others to unlawfully compete with Plaintiff for business in which the trade secrets advantage Plaintiff.

74.    The use by Defendants or of any person with whom Defendants have shared Plaintiff's trade secrets relating to confidential and proprietary information of Plaintiff's customers has and will expose Plaintiff to irreparable harm in terms of both legal liability and damage to Plaintiff's reputation.

75.    Plaintiff demands injunctive relief that will immediately terminate the continued misappropriation by Defendants and that will proscribe the use or threatened use in commerce or otherwise by Defendants of the wrongfully possessed trade secrets of Plaintiff. The relief sought includes but is not limited to an order requiring that:

> a.    Defendants return to Plaintiff all copies of Plaintiff's trade secrets stored in a form that is easily transported;
>
> b.    Defendants destroy all copies of the wrongfully possessed trade secrets of Plaintiff (including backup and archival copies and copies that Defendants may have shared or otherwise delivered to third parties);
>
> c.    Defendants certify destruction of the wrongfully possessed trade secrets of Plaintiff in a manner satisfactory to the Court under threat of contempt should Defendants fail to fully obey the Court's Order; and

     d.    Defendants identify any and all individuals or businesses with whom the Plaintiff's protected information was shared and also identify any and all uses of the protected information made by Defendants after the termination of the business relationship and identify any and all contracts or business transactions acquired or undertaken as a result of Defendants' possession of the protected materials.

76.    Further, due to Defendants location in India, making inspection or other means of compliance assurance difficult, Plaintiff also demands that the period for Defendants' worldwide non-competition and non-hiring of current EIPL employees be restarted as of the day on which Defendants satisfy the Court that they have complied with the Court's injunction requiring Defendants return or destroy all copies of Plaintiff's trade secrets in their possession (including copies provided to third parties).

77.    Further, due to the threat to Plaintiff's reputation of Defendants' unreasonable delay in ceasing use of Plaintiff's registered trademark, Plaintiff demands that Defendants be enjoined to cease using the name "eprentise" immediately, along with any other relief deemed just and appropriate.

### Count III– Unauthorized Use of Plaintiff's Registered United States eprentise® Trademark and Indian Registered Trademark

78.    Plaintiff, eprentise, LLC, incorporates and realleges Paragraphs 1 through 77 above as if set forth fully herein.

79.   Plaintiff applied for and on October 17, 2006, was awarded a federally registered United Stated trademark, Registration Number 3157644, covering both the trade name "eprentise" and a distinctive red lower-case rendering of the name eprentise as its mark. *See* Exhibit F.

80.   Plaintiff has maintained and used its mark in connection with the goods or services specified on its registration for more than sixteen continuous years after the registration date.

81.   Plaintiff's United States trademark is uncontestable.

82.   Plaintiff's wholly owned Indian subsidiary, EIPL, is holder of an Indian Registered Trade Mark, No. 5016816, issued for Class 42, pursuant to the Indian Trade Marks Act, 1999. The mark is identical to the United States registered mark. *See* Exhibit G

83.   Plaintiff's historic and current software products operate in a narrow market space comprised of large company end-user customers who operate all or part of their business enterprise resource planning systems on the Oracle E-Business Suite ("EBS").

84.   In addition, numerous information technology service provider companies, both large and small, assist those large company end-users in making decisions about how to accomplish changes in their EBS environments. Companies and persons in these positions often influence end-user decisions whether to buy software licenses from Plaintiff and also, frequently, provide

services to end-users assisting them in the utilization of Plaintiff's software and providing IT services that are not handled by Plaintiff's software.

85.    The eprentise families of software permit those end-users to make substantial changes in their EBS implementations after data has been entered into the system without reimplementing (e.g., without starting over again). This software is unique in the marketplace.

86.    Plaintiff's CEO is renown in the EBS world, having worked for Oracle's own EBS consulting practice from shortly before the first product release of EBS (then known as Oracle Applications) in 1988. She was the author of internal Oracle EBS training manuals and, after leaving Oracle, led EBS consulting practices for two of the world's largest IT service providers. As such, through association, the name "eprentise" in the Oracle EBS world carries substantial commercial value.

87.    Returning to the business relationship of the Parties, after termination of services by Tiwari effective December 31, 2020, on January 7, 2021, Plaintiff's General Counsel sent a letter acknowledging the immediate termination of the eprentise – ESPL business relationship and set out a list of demands in relation to Plaintiff's intellectual property, confidential information, non-compete, and non-hire provisions. The letter indicated that eprentise would transfer the ESPL employees to another Indian Company that was to be started by the Plaintiff. The list also included requests to

immediately cease to use the name eprentise, and (as required pursuant to Exhibit D, ¶10, d.), to refund any monies advanced to ESPL that were not expended. A similar letter was sent on January 27, 2021, by Plaintiff's General Counsel.  On January 11, 2021, a cease-and-desist letter was also sent to Tiwari demanding that he and Defendant ESPL cease using the eprentise name and mark. The letters are reproduced as Exhibit H.

88.    Even after January 1, 2021, in violation of Plaintiff's trademarks, Defendant Tiwari has continued to use the name and logo in a variety of ways, including: on his personal LinkedIn profile, on all search engines listing eprentise Software PVT LTD, on all public filings, reporting documents, and company registrations, company directories listed on the web, and even for utility billing records and bank accounts. (*See* Exhibit I.)

89.    Even after transfer of all employees (other than Tiwari himself) to Plaintiff's newly formed subsidiary, EIPL, Defendant ESPL has continued to use the eprentise® name and logo in a variety of ways, including: on all search engines listing eprentise Software PVT LTD, on all public filings, reporting documents, and company registrations, company directories listed on the web, and even for utility billing records and bank accounts.

90.    Beginning in January 2021, end users and the consultants referred to above who were using or had used Plaintiff's software worked with Plaintiff's technical services team at ESPL and would not necessarily know that neither

Tiwari nor ESPL retain any association with Plaintiff eprentise. Even for ongoing projects, since the name of Plaintiff's wholly owned subsidiary in Bangalore includes the trade name "eprentise®" in its title, individuals in those companies might not realize that ESPL, which has continued using that trade name, has no remaining affiliation with Plaintiff.

91.    Similarly, others in the E-Business Suite sphere who have not worked directly with Plaintiff, also are unlikely to know that Defendants' rights to use the eprentise name, logo, trade secrets, confidential information, and goodwill has been terminated.

92.    The unauthorized use by Defendants of Plaintiff's trademarked name (with or without use of the logo) is causing and will cause confusion in the marketplace.

93.    Defendants' failure to promptly cease using Plaintiff's trademarked name has caused and will continue to cause irreparable injury to Plaintiff through the confusion surrounding the relationship of Defendants to eprentise®.

94.    Due to Defendant Tiwari's and Defendant ESPL's continuing unauthorized use of the eprentise® registered trademark and the irreparable harm to Plaintiff caused by the continuing and unauthorized use, Plaintiff eprentise, LLC is seeking preliminary and permanent injunctive relief as permitted by 15 U.S.C. §1116 including but not limited to: an injunction

requiring immediate cessation of use of the name "eprentise" by Defendant ESPL; an injunction ordering that Tiwari not hold himself out as affiliated in any way with Plaintiff (other than as historic reference on his CV showing cessation of that relationship on December 31, 2020).

95.    Due to Defendant Tiwari's  and Defendant ESPL's unauthorized continuing use of the eprentise® registered trademark and the irreparable harm to Plaintiff caused by the continuing and unauthorized use, Plaintiff eprentise, LLC is seeking preliminary and permanent injunctive relief as permitted by the India Trade Mark Act of 1999, including but not limited to: an injunction requiring immediate cessation of use of the name "eprentise" by Defendant ESPL; an injunction ordering that Tiwari not hold himself out as affiliated in any way with Plaintiff (other than as historic reference on his CV showing cessation of that relationship on December 31, 2020).

96.    As set out more fully above in relation to the trade secrets claims, Defendants' deliberate refusal to promptly cease and desist use of Plaintiff's trademarked name has deprived Plaintiff of the full benefit of the non-compete and non-hire provisions between Plaintiff, Defendant Tiwari, Defendant ESPL and its personnel. Accordingly, Plaintiff demands that the protection against competition and the hiring away of EIPL employees by Defendants be extended so that the period begins to run only at such time as Defendants satisfy the Court that they have ceased their illegal use of Plaintiff's trademarked name.

97.    Plaintiff also demands that Defendants disclose and disgorge any monetary benefit obtained from the wrongful use of Plaintiff's trademarked name, and any further relief deemed just and appropriate.

**Count IV—Infringement of United States Patent No. 8,103,704 B2 covering processes for database consolidation and separation**

98.    Plaintiff incorporates and realleges Paragraphs 1 through 97 above as if set forth fully herein.

99.    United States Patent No. 8,103,704 B2 covering processes for database consolidation and separation was issued to Helene Abrams, ("Abrams"), the CEO of Plaintiff on January 24, 2012.

100.   Abrams granted Plaintiff a license to utilize that patent in the development and deployment of Plaintiff's software products. The Plaintiff also is authorized to permit use of the patent in furtherance of Plaintiff's product development. Use of the patent in furtherance of Plaintiff's product development was impliedly granted to Defendants. The licensure also authorizes Plaintiff to take steps to protect the patent against actual or potential infringement of which Plaintiff is aware.

101.   Any permission that may have been granted to Defendants, implied or otherwise, to use Plaintiff's patent and any licensure to do so has been revoked.

102.    Tiwari, being fully versed in the underlying technical aspects of Plaintiff's software and being aware of the content of Abrams' patent, is among the comparatively small class of persons able to incorporate Plaintiff's patented process into competing software or make use of it as part of consulting efforts.

103.    The trade secrets referred to in Counts I and II above include trade secrets that inform how the patented method can best be utilized, and how the software is executed in a client environment that are not part of the patent, and how the patented process can be incorporated by Tiwari in software or consulting efforts that compete with Plaintiff's business.

104.    Upon information and belief, Defendant Tiwari, intends to compete with Plaintiff, either alone or in combination with Defendant ESPL or another person or entity. Upon information and belief, Tiwari has not and will not inform Plaintiff of the competition or to seek licensure to use Plaintiff's patented process.

105.    Plaintiff will suffer immediate, irreparable harm by Defendants' infringement of the Patent and/or use of the trade secret information associated with the use of the Patent.

106.    Plaintiff seeks an injunction restraining Defendant Tiwari from making any unlicensed use of Plaintiff's patented process for database separation and consolidation.

### PRAYER FOR RELIEF

Page 26

WHEREFORE, Plaintiff requests that this Court award Plaintiff:

1.      Such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of irreparable injury during the pendency of this action;

2.      Permanent and/or temporary injunctive relief;

3.      Monetary damages;

4.      Monetary and equitable relief as the Court finds necessary to redress injury and losses sustained by Plaintiff in the past and future, including but not limited to, lost profits from Defendants' misappropriation of trade secrets, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies and the amount by which Defendants have been unjustly enriched, and any other damages; and

5.      Attorney's fees and costs for bringing this action, as well as other such relief as this Court determines to be just and proper.

6.      As an alternative to the actual damages based on losses or unjust enrichment for Defendants' unauthorized disclosure and/or use of the Plaintiff's trade secrets, Plaintiff seeks royalties for Defendants' unauthorized disclosure and/or use of the Plaintiff's trade secrets, as well as other such relief as this Court determines to be just and proper.

## TRIAL BY JURY

Plaintiff further demands a trial by jury on all issues so triable.

Respectfully submitted,
ANDONE LAW, P.A.

*/s/Joshua A. Andone*
JOSHUA A. ANDONE
Fla. Bar No.: 111335
Email: Service@andonelaw.com
josh@andonelaw.com
8815 Conroy Windermere Rd. #241
Orlando, Florida 32835
T: 407.589.9388  F: 407.635.1202
LEAD COUNSEL for Plaintiff